Edwin BEAN, Danny L. Claborn, Ernest Bert Dodd, Arlon Turner, Morene Garner, Louise Jones, Jimmy Lindsey, Burlin McCreless, Thomas Moore, Richard O'Tinger, Leona Richardson, Arvie Lee Scruggs, Verlon White, Jerry A. Williams

v.

UNITED RUBBER, CORK, LINOLEUM AND PLASTIC WORKERS OF AMERICA, AFL–CIO, CLC, a national labor union; Reeves Rubber, Inc., a corporation; S & B Technical Productions, a corporation; Bobby Breedwell, individually and in his official capacity as President of Local 899 URCLPWA of Albertville, Alabama.

No. CV94–PT–1033–M.

United States District Court,
N.D. Alabama,
Middle Division.

Sept. 9, 1994.

John T. Robertson, IV, Henslee Bradley & Robertson, Gadsden, AL, for plaintiffs.

John Lee Quinn, Longshore Nakamura & Quinn, Birmingham, AL, Charles R. Armstrong, Carolyn T. Wonders, URW Asst. Gen. Counsel, Akron, OH, William B. Hairston, Jr., Engel Hairston & Johanson, Birmingham, AL, Peter F. Munger, Paul T. Ryan, Clark Paul Hoover & Mallard, Atlanta, GA, and Edward Bograd and Terrie V. Hagler, Blair Conaway Bograd & Martin, Charlotte, NC, for defendants.

## MEMORANDUM OPINION

PROPST, District Judge.

This cause comes to be heard on defendant S & B Technical Products' (hereinafter S & B) Motion to Dismiss. S & B originally filed this motion on June 20, 1994. Plaintiffs responded to the motion in brief submitted July 6, 1994. S & B replied to plaintiffs' response in brief submitted July 18, 1994. This court filed a Memorandum Opinion on August 1, 1994, explaining the court's tentative positions regarding the issues raised by the Motion, and affording plaintiffs an opportunity to respond to such positions. Both plaintiffs and defendant S & B have submitted supplemental briefs in response to the court's earlier Memorandum Opinion.

### FACTS AND CONTENTIONS

*Facts*

In considering this Motion to Dismiss, the court derives the facts from the allegations contained in plaintiffs' complaint and amended complaint, as well as affidavits submitted by plaintiffs, and assumes all facts alleged therein to be true.

Plaintiffs were for many years employed by defendant Reeves Rubber, Inc. (Reeves),

at its Albertville, Alabama plants. Plaintiffs' Complaint at 2. Defendants United Rubber, Cork, Linoleum & Plastics Workers of America, AFL–CIO, and Local 899, URCLPWA of Albertville, Alabama (collectively "the Union"), were plaintiffs' exclusive bargaining agents in negotiating and enforcing employment contracts with Reeves. *Id.* Pursuant to that authority, the Union and Reeves entered into a Collective Bargaining Agreement (CBA) in July, 1992. That agreement was to be effective until June 10, 1995. *Id.*

On or about November 2, 1993, Reeves sold its facility at which some of the plaintiffs worked to defendant S & B. At that time, Reeves terminated the employment of those plaintiffs. On or about February 1, 1994, Reeves sold the facility at which the remaining plaintiffs worked to defendant S & B. *Id.* at 3. At that time, Reeves terminated those plaintiffs' employment. *Id.*

Sometime after these transactions occurred, S & B purchased substantially all the remaining assets of Reeves. *Id.* The court does not know why the remaining assets were purchased *after* the facilities were purchased.

Since these purchases, S & B has hired a majority of Reeves' former employees. Moreover, a majority of S & B's employees at these facilities were employees of Reeves when it owned the same facilities. *Id.* Plaintiffs applied for positions with S & B, but were not hired. *Id.* According to plaintiffs, S & B chose not to re-hire them because they were the more senior and pro-union workers at Reeves. *Id.* at 4. Thus, plaintiffs allege, S & B's hiring practices were grounded in anti-union animus.

S & B has continued to manufacture the same products at these facilities as Reeves manufactured. *Id.* at 3. No new products

have been introduced. *Id.* Based on the similarities of employees, assets, and manufacturing activities, plaintiffs allege that there is substantial identity between Reeves and S & B. Moreover, given this substantial identity, plaintiffs contend that S & B is bound by the terms of the CBA entered into by the Union and Reeves.

Plaintiffs allege that through the sale of the business and the subsequent failure to hire former employees on the basis of Union loyalty, defendants S & B and Reeves conspired[1] to "so act as to nullify and void the Collective Bargaining Agreement, and to rid themselves of its terms, conditions, obligations, and responsibilities." *Id.* at 4. Plaintiffs allege that, pursuant to this conspiracy, defendant S & B has committed unfair labor practices and has breached repeatedly the terms of the CBA. Specifically, plaintiffs contend that S & B's actions in failing to recognize and negotiate with the Union as the exclusive bargaining agent for plaintiffs and others, in implementing changes in the terms of plaintiffs' employment without bargaining in good faith, in engaging in individual bargaining with its individual employees, and in refusing to hire plaintiffs, constitute both unfair labor practices in violation of § 8(a)(1), § 8(a)(3), and § 8(a)(5) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158 (1988), as well as breaches of the CBA, which are actionable under § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185 (1988).

In addition, plaintiffs allege that defendant Union was under, and still remains under, a duty to represent the interests of its members fairly. Plaintiffs contend that, pursuant to that duty, the Union was obligated to negotiate with S & B for plaintiffs' employment. Moreover, plaintiffs contend that the Union was and is obligated to pursue their

---

1. The court notes that the allegation of a conspiracy is conclusory, contrary to the requirements of Eleventh Circuit cases. *See Fullman v. Graddick,* 739 F.2d 553 (11th Cir.1984). The court also notes that five federal circuits have held that there is no cause of action under section 301 for conspiracy to violate or to breach a CBA. *Abrams v. Carrier Corp.,* 434 F.2d 1234, 1253 (2d Cir.1970), *cert. denied sub nom. United Steelworkers v. Abrams,* 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971); *Carpenters Local Union No.*

*1846 v. Pratt–Farnsworth, Inc.,* 690 F.2d 489, 502 (5th Cir.1982), *cert. denied,* 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983); *English v. Cowell,* 969 F.2d 465, 468 (7th Cir.1992); *Russom v. Sears, Roebuck and Co.,* 558 F.2d 439, 441 n. 3 (8th Cir.1977); *Building Material and Dump Truck Drivers, Local 420 v. Traweek,* 867 F.2d 500, 512 (9th Cir.1989); *see also Griese–Taylor Corp. v. First Nat'l Bank,* 572 F.2d 1039 (5th Cir.1978).

unfair labor practices claims with the National Labor Relations Board (NLRB). Plaintiffs allege that, in bad faith, the Union has refused to enforce the CBA, has refused to attempt to negotiate with S & B, and has refused to pursue plaintiffs' unfair labor practices claims with the NLRB. *Id.* at 6. Plaintiffs contend that because the Union's failure to take these actions was arbitrary, discriminatory, and in bad faith, such inaction constitutes a breach of the Union's duty of fair representation.

*Contentions of the Parties*

S & B ("defendant") has moved to dismiss the complaint against it on two grounds. First, defendant argues that this court lacks subject-matter jurisdiction as to claims brought against it under § 8 of the Act. Second, defendant contends that, as against S & B, the complaint alleging violations of § 301 of the LMRA fails to state a claim upon which relief can be granted. For these reasons, defendant urges this court to dismiss the complaint against it under Rule 12(b)(1) and 12(b)(6), FED.R.CIV.P.

Defendant argues that this court lacks subject-matter jurisdiction over claims brought against it under § 8 of the NLRA. Citing *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), defendant reasons that under § 10 of the Act, 29 U.S.C. § 160(a) (1988), Congress has conferred on the NLRB primary and exclusive jurisdiction over claims brought under § 8 of the Act. This jurisdiction "preempts the authority of federal courts with respect to claims falling solely within the ... prohibitions of Section 8[ ] of the Act." S & B's Brief in Support at 3. For this reason, defendant urges this court to dismiss all claims brought against it under Section 8 of the Act.

Further, defendant contends that any claim brought against it under § 301 of the LMRA fails to state a claim upon which relief can be granted. In addition, defendant argues that this court lacks subject-matter jurisdiction over any such claim. As to both of these grounds, defendant reasons that the jurisdictional grant conferred by § 301 extends only to "[s]uits for violation of contracts between an employer and a labor orga-

nization...." 29 U.S.C. § 185(a) (1988). Thus, in order to sue under § 301, defendant maintains, there must be a contract in existence between the employer and the labor organization. Defendant admits that a successor employer can be required to bargain and negotiate with a labor organization, if there is a "substantial continuity of identity" between the predecessor and successor employers. Plaintiffs' claim still fails under this standard, defendant asserts, because the duty to bargain has never been extended to a duty to abide by the terms of the preexisting CBA. There was no contract which had been entered into between the Union and S & B. Thus, defendant argues, no suit can be maintained against it under § 301, nor could this court exercise jurisdiction under that section.

In opposition to defendant's motion, plaintiffs' argument is two-fold. First, plaintiffs contend that the court has jurisdictional power to resolve unfair labor practice questions which arise as collateral issues to a suit for a union's breach of its duty of fair representation. Second, plaintiffs assert that because defendant voluntarily hired a majority of Reeves' former employees, defendant placed itself under a duty to bargain with the Union, if not under a duty to abide by the CBA.

In response to defendant's § 8 jurisdictional argument, plaintiffs maintain that this court can exercise jurisdiction over unfair labor practice claims, where those claims "emerge as collateral issues in suits brought under independent federal remedies." *Communications Workers v. Beck,* 487 U.S. 735, 743, 108 S.Ct. 2641, 2647, 101 L.Ed.2d 634 (1988). Citing *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), plaintiffs argue that one such independent federal remedy is a union's breach of fair representation. Thus, plaintiffs argue that the court can exercise jurisdiction over all § 8 claims which form the basis for the plaintiffs' breach of fair representation claims.

Answering defendant's contentions as to § 301, plaintiffs assert that defendant's actions in employing a majority of the work force of Reeves operated to impose upon defendant a duty to bargain with the Union. "That duty to bargain[,]" plaintiffs reason,

"concerns whether and to what extent the terms and conditions of the collective bargaining agreement as it presently exists may be extended to and enforced against S & B Technical Products, Inc., by virtue of its status as a successor employer." Plaintiff's Brief in Opposition at 7. For that reason, plaintiffs argue that they have asserted a cognizable § 301 claim.

## ANALYSIS OF THE COURT

The Motion before the court raises two issues. First, does this court have subject-matter jurisdiction over any purported claims against defendant S & B brought under § 8 of the NLRA? Second, do plaintiffs' claims against defendant commenced under § 301 of the LMRA state a claim upon which relief can be granted?

**I. Does this court have subject-matter jurisdiction over any claims commenced against defendant for violations of § 8 of the NLRA?**

◼ Plaintiffs' complaint alleges that the actions of defendant in failing to rehire plaintiffs based on union loyalty, in failing to recognize the Union as the exclusive bargaining agent for plaintiffs and others, in negotiating with employees on an individual basis, and in refusing to bargain with the Union in good faith, constitute "unfair labor practices" for purposes of § 8 of the NLRA. Defendant urges this Court to dismiss these claims for want of subject-matter jurisdiction.

A. *This Court has no jurisdiction over any claim which is arguably brought under section 8.*

◼ Section 8 of the NLRA defines those actions which constitute unfair labor practices. 29 U.S.C. § 158 (1988). In section 10 of the NLRA, Congress has vested in the National Labor Relations Board the power "to prevent any person from engaging in any unfair labor practice ... affecting commerce." 29 U.S.C. § 160(a) (1988). The United States Supreme Court has held that, as set out in section 10, the power of the Board to determine what constitutes an unfair labor practice is virtually plenary. As the Court stated in *San Diego Bldg. Trades*

*Council v. Garmon,* 359 U.S. 236, 245, 79 S.Ct. 773, 779–80, 3 L.Ed.2d 775 (1959) (emphasis added), "[w]hen an activity is arguably subject to ... § 8 of the Act, the States as well as the federal courts must defer to the *exclusive competence* of the National Labor Relations Board...." "Consequently, as a general rule, neither state nor federal courts have jurisdiction over suits directly involving activity which is *arguably* subject to ... § 8 of the Act." *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) (emphasis added) (internal quotation omitted).

B. *Plaintiffs' argument, that the court has jurisdiction over all section 8 issues that arise in a fair representation context, is not supported by the relevant precedent.*

◼ Plaintiffs contend that *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), and its progeny control this case. In that case, the Supreme Court held that the rule enunciated in *Garmon* does not apply where the claim which is "arguable subject to § 8" is asserted against a union for a breach of its duty of fair representation. *Id.* at 176–77, 87 S.Ct. at 909–10. Plaintiffs argue that the Supreme Court has extended the rule of *Vaca,* so that, in the words of the Court in *Communications Workers v. Beck,* 487 U.S. 735, 743, 108 S.Ct. 2641, 2647, 101 L.Ed.2d 634 (1988), "[f]ederal courts may resolve unfair labor practice questions that emerge as collateral issues in suits brought under independent federal remedies." (internal quotation omitted). According to *Beck,* "one such remedy over which federal jurisdiction is well settled is the judicially implied duty of fair representation." *Beck,* 487 U.S. at 743, 108 S.Ct. at 2647. Thus, plaintiffs argue, where a duty of fair representation claim is made, the court has subject-matter jurisdiction over any Section 8 unfair labor practice claim related to the unfair representation claim.

As an analysis of these cases demonstrates, plaintiffs' argument is not supported by either *Vaca* or *Beck.* In *Vaca,* plaintiff sued his union, alleging that defendant breached its duty of fair representation. *Vaca,* 386 U.S. at 173, 87 S.Ct. at 908. The union defended on grounds that the claim for

a breach of duty of fair representation itself constituted an allegation of an "unfair labor practice" under § 8 of the NLRA, and thus, consistent with *Garmon*, was not within the Missouri state trial court's jurisdiction. *Id.* The Supreme Court disagreed, holding that Congress did not intend to confer exclusive jurisdiction over fair representation claims to the NLRB. *Id.* at 183, 87 S.Ct. at 913.

*Vaca* is of no help to plaintiffs' argument. The Court's narrow jurisdictional holding in that case was that the courts have jurisdiction over fair representation claims, even though a breach of a union's duty of fair representation can also constitute an "unfair labor practice" under § 8 of the NLRA. The *Vaca* holding in no way suggests that the commencement of a fair representation claim can serve as a basis for conferring upon the court subject-matter jurisdiction over § 8 claims in their own right. Thus, *Vaca* does not support the proposition that this court can exercise jurisdiction over any claim brought under section 8. Rather, *Vaca*, as applied to this case, stands for the proposition that the court has jurisdiction over plaintiffs' claims against the Union for breach of its duty of fair representation, although that breach itself may constitute a violation of section 8.

The *Beck* case, on the other hand, is more pertinent. In *Beck*, plaintiffs sued their union for excessive fee collection on three grounds. *Beck*, 487 U.S. at 742, 108 S.Ct. at 2647. First, plaintiffs alleged that agency fees which the union collected exceeded those sums necessary to finance collective bargaining and were therefore obtained in violation of § 8(a)(3) of the NLRA. *Id.* Second, they argued that the fee collection violated the union's duty of fair representation. *Id.* Third, plaintiffs alleged that the collections violated their First Amendment rights to freedom of association. *Id.* After an adverse judgment at trial, defendants argued on appeal that the lower court lacked jurisdiction to address the merits of the section 8 claims.

■ Addressing the jurisdictional issues as to the first two claims, the Supreme Court concluded that the lower courts had no subject-matter jurisdiction over any § 8 claims,

but that those courts had subject-matter jurisdiction over the claims alleging a breach of duty of fair representation. *Id.* at 742–43, 108 S.Ct. at 2647. As to the section 8 issue, the Court held that the rule of *Garmon* was controlling, *regardless* of any connection between the fair representation claim and the section 8 claim. *Id.* at 742, 108 S.Ct. at 2647. As to the fair representation claim, however, the Court reasoned:

> The [lower] court was not precluded, however, from deciding the merits of this [section 8] claim insofar as *such a decision was necessary to the disposition of [the] duty of fair representation challenge.* Federal courts may resolve unfair labor practice issues that emerge as collateral issues in suits brought under independent federal remedies, ... and one such remedy over which federal jurisdiction is well settled is the judicially implied duty of fair representation. This jurisdiction to adjudicate fair representation claims encompasses challenges leveled not only at a union's contract administration and enforcement efforts, ... but at its negotiation activities as well. Employees, of course, may not circumvent the primary jurisdiction of the NLRB by casting statutory claims as violations of the union's duty of fair representation.... [In this case, however,] *the necessity of deciding the scope of § 8(a)(3) arises because petitioners seek to defend themselves on the ground that the statute authorizes precisely this type of agreement.* Under these circumstances, the [lower court] had jurisdiction to decide the § 8(a)(3) question raised by [plaintiffs'] duty-of-fair-representation claim.

*Beck*, 487 U.S. at 743–44, 108 S.Ct. at 2647–48 (citations and internal quotations omitted) (emphasis added). Thus under *Beck*, a federal court has jurisdiction to adjudicate a section 8 issue, where the resolution of that issue is necessary to a claim alleging a breach of a union's duty of fair representation.

■ Plaintiffs' complaint alleges that defendant S & B has engaged in numerous violations of section 8. Whether these claims have merit is highly relevant to whether the Union had a duty to pursue those section 8

claims with the NLRB.[2] Thus, this court has jurisdiction to decide whether plaintiffs' section 8 claims are colorable, for the limited purpose of determining whether the Union's failure to pursue plaintiffs' section 8 claims before the NLRB constitutes a breach of the Union's duty of fair representation.[3] This is consistent with *Beck*, where the Supreme Court held that the federal courts have jurisdiction to decide those section 8 issues, the resolutions of which are necessary to deciding *whether a union has breached its duty of fair representation*. *Beck*, 487 U.S. at 743–44, 108 S.Ct. at 2647–48.

■ However, the jurisdictional grant applied in *Beck* does not allow this court to exercise jurisdiction over section 8 claims outright, merely because plaintiffs have asserted unfair representation claims in the same action. In *Beck*, the section 8 issue was necessary to resolve the unfair representation issue against the union, and the Court held that there was jurisdiction to resolve the section 8 issue to that extent. *Id.* at 744, 108 S.Ct. at 2648. Yet the Court in *Beck* explicitly held that there was no jurisdiction to address the merits of any section 8 claim. *Id.* at 743, 108 S.Ct. at 2647 ("The Court of Appeals erred ... [by] conclud[ing] it possessed jurisdiction to pass directly on [the] § 8(a)(3) claim."). Under *Beck*, this court has no jurisdiction to decide the merits of any claims grounded directly under section 8.

■ Plaintiffs have argued, in essence, that *Beck* allows this court to exercise jurisdiction over any section 8 claims, asserted against any party, related to a breach of fair representation claim. As the Supreme Court's own warnings in *Beck* point out, however, this argument is too broad. Under *Beck*, plaintiffs cannot cloak a section 8 claim in the mantle of a fair representation claim in order to confer jurisdiction on the court. *Beck*, 487 U.S. at 743, 108 S.Ct. at 2647. Rather, *Beck* merely holds that in a fair representation case, a section 8 issue which must be decided in order to rule on the merits of the fair representation claim can be decided by the federal courts. Because the section 8 claims asserted against S & B are independent of claims asserted against the Union, *Beck* does not allow this court to exercise jurisdiction over the section 8 claims brought against S & B.

### C. *Plaintiffs' analogy to section 301/hybrid actions fails.*

Plaintiffs argue that where a union breaches its duty of fair representation by failing to pursue unfair labor practice claims with the NLRB, and where employees sue in the federal courts for such breach, the employees may also sue the employer in the same action for the unfair labor practices themselves. In essence, plaintiffs attempt to analogize to section 301 hybrid actions, where the court can entertain fair representation claims against unions simultaneously with section 301 claims against employers. An analysis of this argument follows.

■ It seems clear that the federal courts have jurisdiction over claims against a *union* for breach of its duty of fair representation as to all claims asserting rights of the bargaining unit as a whole, since such a duty is implied in the statute conferring on the union the status of exclusive bargaining agent. 29 U.S.C. § 159(a); *Chauffeurs, Teamsters, and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 563, 110 S.Ct. 1339, 1343–44, 108 L.Ed.2d 519 (1990) ("The duty of fair representation is inferred from unions' exclusive authority under the National Labor Relations Act ... to represent all employees in a bargaining unit.") As the Supreme Court has stated, "a union['s] ... duty of fair representation ... applies to all union activity ..." which derives from the Union's authority as sole representative of its constituents. *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 67, 111 S.Ct. 1127, 1130, 113 L.Ed.2d 51 (1991). Since a claim that an employer is engaging in an unfair labor practice is essentially a claim asserting a collective right of

---

**2.** Obviously, a Union has no duty to prosecute frivolous section 8 claims.

**3.** To prove that the Union breached its duty of fair representation, plaintiffs must prove that their section 8 claims were colorable, but they must also prove that the Union's failure to pursue those claims was arbitrary and in bad faith.

union members (especially where that alleged unfair labor practice is grounded in anti-union discrimination), it appears that the union's duty of fair representation would include a duty to pursue any unfair labor practice claim against an employer. Thus, a suit against a union, alleging that the union breached its duty of fair representation by refusing to pursue unfair labor practice claims, could be maintained in the federal courts, despite the fact that unfair labor practice claims themselves rest within the exclusive jurisdiction of the NLRB. 29 U.S.C. § 160.

Plaintiffs apparently argue that when they sue the Union for breach of its duty of fair representation, based on an alleged arbitrary refusal to pursue an unfair labor practices claim against S & B, the plaintiffs can join S & B in the same suit claiming damages for the unfair labor practice itself. Plaintiffs apparently argue that since the federal court clearly has jurisdiction over the fair representation claim, the court has jurisdiction over the unfair labor practice claim against S & B as well, despite the *Garmon* preemption doctrine. Such a result, plaintiffs conclude, is mandated by the analogous situation in section 301/hybrid actions.

This argument ignores the fact that in a section 301 hybrid action, the court has independent subject-matter jurisdiction over the claim against the employer, as well as the claim against the union. The claim against the union is grounded in the statutory duty of fair representation, based on the union's status as exclusive bargaining agent for the employees under section 9 of the NLRA. The claim against the employer for breach of the CBA is grounded in section 301.

Although the court has subject-matter jurisdiction over the fair representation claim in this case, the court lacks jurisdiction over *any unfair labor practice claim* as such. The Supreme Court has held that when a claim is brought under section 8, the courts must defer to the exclusive competence of the NLRB. *San Diego Bldg. Trades Council*

*v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 779–80, 3 L.Ed.2d 775 (1959). Since plaintiffs have sued S & B directly for an unfair labor practice, the section 8 issue is not collateral; rather, plaintiffs are seeking relief based on the unfair labor practice itself, thereby placing section 8 directly in issue. As to that issue, the court does not have subject-matter jurisdiction. Thus, these claims against S & B will be dismissed.[4]

## II. Does this court have subject-matter jurisdiction of a 301 hybrid claim against defendant S & B, or is it one upon which relief can be granted?

Defendant argues that plaintiffs' claims under section 301 of the LMRA must be dismissed for lack of subject-matter jurisdiction, *and* for failure to state a claim upon which relief can be granted.

### A. To state a cognizable § 301 claim against defendant, plaintiffs must allege that a contract exists between the Union and defendant.

Section 301 provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a) (1988).

A claim by employees asserting breach of a CBA against an employer usually, as in this case, takes the form of a "hybrid section 301/fair representation action." A section 301 hybrid action "involve[s] claims by an employee against both the employer and the union." *Hester v. International Union of Operating Engineers*, 830 F.2d 172, 175 (11th Cir.1987). As the Supreme Court has described:

Such a suit, as a formal matter, comprises two causes of action. The suit against the

---

4. Plaintiffs have not cited any case(s) which hold that an unfair representation claim against a union based on its refusal to pursue unfair labor practice claims against an employer, can be joined, in a hybrid action, with unfair labor practice claims against the employer. The only upheld hybrid actions this court has discovered were brought pursuant to § 301.

employer rests in § 301, since the employee is alleging a breach of the collective-bargaining agreement. The suit against the union is one for breach of the unions' duty of fair representation, which is implied under the scheme of the National Labor Relations Act. Yet the two claims are inextricably interdependent. To prevail against either the company or the Union, ... [employee-plaintiffs] must not only show that [the employer's action] was contrary to the contract but must also carry their burden of demonstrating breach of duty by the union. The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both.

*DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 164–65, 103 S.Ct. 2281, 2290–91, 76 L.Ed.2d 476 (1983) (citations and internal quotations omitted); *accord Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 564, 110 S.Ct. 1339, 1344, 108 L.Ed.2d 519 (1990). Thus, to state a hybrid section 301/fair representation claim for which relief can be granted, and over which the court has subject-matter jurisdiction, plaintiffs must make two allegations: that the Union has breached its duty of fair representation by failing to enforce the terms of an existing contract with the employer, and that the employer has violated the terms of that existing contract.

To satisfy these requirements, defendant argues, plaintiffs must allege that an existing contractual obligation is in force between defendant and the Union. There is no such contract in this case, defendant maintains, for two reasons. First, S & B never contracted directly with the Union. Plaintiffs do not challenge this ground. Second, even though the complaint alleges that the defendant is a "successor employer," which status may require that defendant bargain with the Union, the courts have never imposed upon a successor employer the actual contractual terms of the CBA which had been entered into by the predecessor employer and the Union. For these reasons, defendant argues, there is no existing contract between the Union and defendant. Accordingly, defendant urges this court to dismiss the claims against defendant under section 301 for lack of subject-matter jurisdiction, and for failure to state a claim upon which relief can be granted.

B. *The United States Supreme Court has held that certain "successor employers" are obliged to arbitrate with the unions under preexisting CBAs entered into by predecessor employers for claims of any employee.*

In *John Wiley and Sons, Inc. v. Livingston,* 376 U.S. 543, 544, 84 S.Ct. 909, 912, 11 L.Ed.2d 898 (1964), a union entered into a CBA with Interscience, a publisher, which was to be effective until January, 1962. In October, 1961, Interscience merged with Wiley, and Interscience ceased doing business. *Id.* at 545, 84 S.Ct. at 912. After the merger, Wiley continued to employ most of Interscience's work force. *Id.* at 545–46, 84 S.Ct. at 912. The union then sought to enforce against Wiley certain rights under the preexisting CBA of former Interscience employees who had been hired by Wiley. *Id.* at 545, 84 S.Ct. at 912. Wiley contended that the CBA was entirely unenforceable, since it was not a party to the agreement. *Id.* The union sued under § 301, alleging that, at the very least, the arbitration provisions of the contract survived the merger and were thus enforceable against Wiley. *Id.* at 544, 84 S.Ct. at 912. In defense, Wiley argued that it had never assumed the CBA negotiated by Interscience, and thus it could not be required to arbitrate under that CBA.

The Supreme Court framed the issue before it as follows:

Here, the question is whether Wiley, which did not itself sign the collective bargaining agreement on which the Union's claim to arbitration depends, is bound at all by the agreement's arbitration provision.... The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede a judicial determination that the collective bargaining agreement does in fact create such a duty....

*Wiley,* 376 U.S. at 547, 84 S.Ct. at 913. At the outset, the Court noted that "[w]hile the principles of law governing ordinary contracts would not bind to a contract an uncon-

senting successor to a contracting party, a collective bargaining agreement is not an ordinary contract." *Id.* at 550, 84 S.Ct. at 914. Rather, as the Court stated,

> This case cannot be assimilated to the category of those in which there is no contract whatever, or none which is reasonably related to the party sought to be obligated. There was a contract, and Interscience, Wiley's predecessor, was a party to it. We thus find Wiley's obligation to arbitrate this dispute in the Interscience contract construed in the context of a national labor policy.

*Id.* at 550–51, 84 S.Ct. at 915. As a result, the Court held that a successor employer may in some situations be bound by an arbitration agreement contained in a CBA negotiated by a predecessor employer. *Id.* at 550–51, 84 S.Ct. at 915. As the Court stated:

> [T]he disappearance by merger of a corporate employer which has entered into a collective bargaining agreement with a union does not automatically terminate all rights of the employees covered by the agreement, and that, in appropriate circumstances, present here, the successor employer may be required to arbitrate with the union under the agreement.

*Id.* at 548, 84 S.Ct. at 914.

The Court's task then turned to defining those "appropriate circumstances" which justify imposing a contractual duty to arbitrate on successor employers. The Court attempted to describe these circumstances:

> We do not hold that in every case in which the ownership or corporate structure of an enterprise is changed the duty to arbitrate survives. As indicated above, there may be cases in which the lack of any substantial continuity of identity in the business enterprise before and after a change would make a duty to arbitrate something imposed from without, not reasonably to be found in the particular bargaining agreement and the acts of the parties involved.... [In this case, however, the] relevant similarity and continuity of operation across the change in ownership is evidenced by the wholesale transfer of Interscience employees to the Wiley plant....

*Id.* at 551, 84 S.Ct. at 915. Thus, the Court held that where the successor and the predecessor employer share a "substantial continuity of identity," a contractual duty to arbitrate, grounded in the preexisting CBA, is imposed on the successor as to claims asserting rights of employees who were covered by the predecessor's CBA, and who were rehired by the successor.

## C. The Court has subsequently amplified the holdings of Wiley.

### 1. The Burns decision.

In *NLRB v. Burns Int'l Security Servs.*, 406 U.S. 272, 274, 92 S.Ct. 1571, 1575, 32 L.Ed.2d 61 (1972), Wackenhut provided security service for a Lockheed plant. Wackenhut entered into a CBA with the union representing its employee security guards. *Id.* While the CBA was in effect, Burns, a competitor of Wackenhut, secured the Lockheed security contract. *Id.* At that point, Burns hired 27 of Wackenhut's guards to complete its force of 42 guards. *Id.* at 275, 92 S.Ct. at 1576. Burns provided the former Wackenhut guards with membership cards of another union, and refused to recognize their union. The union representing the Wackenhut guards filed unfair labor practice charges with the NLRB against Burns, alleging that Burns refused to recognize and bargain with the union, in violation of § 8(a)(5), and that Burns had breached the preexisting CBA. *Id.* at 276, 92 S.Ct. at 1576.

Although the Court held that Burns had a duty to bargain with the union under section 8, the Court rejected the union's contention that Burns had assumed the substantive terms of the CBA. As the Court stated, "[i]t does not follow ... from Burns' duty to bargain that it was bound to observe the substantive terms of the collective-bargaining contract the union negotiated with Wackenhut and to which Burns had in no way agreed." *Id.* at 281–82, 92 S.Ct. at 1579. The Court noted that the NLRB, which had required Burns to abide by the substantive provisions of the CBA, was bound to follow section 8(d) of the NLRA. *Id.* at 282, 92 S.Ct. at 1579. Under section 8(d), "the existence of such bargaining obligation does not compel either party to agree to a proposal or

require the making of a concession." *Id.* at 282, 92 S.Ct. at 1579 (internal quotation omitted). As evidenced chiefly by this statute, the Court reasoned, "Congress has consistently declined to interfere with free collective bargaining...." *Id.* Rather, Congress has chosen to affirm "freedom of contract" as one of the "fundamental policies" of the national labor laws. *Id.* at 284, 92 S.Ct. at 1580.

The Court concluded that *"Wiley* [is not] controlling in the circumstances here." *Burns,* 406 U.S. at 286, 92 S.Ct. at 1581. The Court reasoned that since the case was brought under section 8(d), the Congressional concern behind section 8, and behind the national labor laws in general, of preserving freedom of contract was paramount. *Id.* at 287, 92 S.Ct. at 1582. Thus, the Court concluded that Burns was not bound by the preexisting CBA negotiated by Wackenhut.

 2. The *Howard Johnson* decision.

In *Howard Johnson Co. v. Detroit Local Joint Exec. Bd.,* 417 U.S. 249, 250, 94 S.Ct. 2236, 2237, 41 L.Ed.2d 46 (1974), the union negotiated a CBA with a predecessor employer, the proprietor of a motor lodge and restaurant. Before the expiration of the CBA, Howard Johnson purchased some of the assets of the employer, and leased the restaurant and inn from the employer. *Id.* at 251–52, 94 S.Ct. at 2238. Howard Johnson then began operating the business, but it hired only 9 of the 53 employees of the former proprietor. *Id.* at 252, 94 S.Ct. at 2238. The union sued under § 301, alleging that Howard Johnson's failure to hire all former employees constituted a lockout in violation of the CBA. *Id.*

The district court, as well as the Sixth Circuit, recognized a conflict between *Burns* and *Wiley.* Both courts held that *Wiley* was controlling on grounds that *Wiley,* like *Howard Johnson,* involved a section 301 suit. *Id.* at 255, 94 S.Ct. at 2240. The Supreme Court soundly rejected this reasoning:

 [W]e do not believe that the fundamental policies outlined in Burns can be so lightly disregarded. In *Textile Workers Union v.*

*Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 ... (1957), this Court held that § 301 of the Labor Management Relations Act authorized the federal courts to develop a federal common law regarding enforcement of collective-bargaining agreements. But Lincoln Mills did not envision any freewheeling inquiry into what the federal courts might find to be the most desirable rule, *irrespective of Congressional pronouncements.* Rather, Lincoln Mills makes clear that this federal common law must be *'fashion[ed]'* from the policy of *our national labor laws. Id.* at 457, 77 S.Ct. at 918.... It would be plainly inconsistent with this view to say that the basic policies found controlling in an unfair labor practice context may be disregarded by the courts in a suit under § 301.... Clearly the reasoning of Burns must be taken into account here.

*Howard Johnson,* 417 U.S. at 255–56, 94 S.Ct. at 2240 (emphasis added). The Court's concern with Congressional pronouncements is a clear reference to the *Burns* Court's reasoning that "Congress has consistently declined to interfere with free collective bargaining." *Burns,* 406 U.S. at 282, 92 S.Ct. at 1579. Moreover, the Court's reference to the policy of the national labor laws recalls the *Burns* Court's statement that freedom of contract is a fundamental policy behind the national labor laws. *Id.* at 284, 92 S.Ct. at 1580.

The Court balked, however, on deciding "whether there is any irreconcilable conflict between *Wiley* and *Burns." Howard Johnson,* 417 U.S. at 256, 94 S.Ct. at 2240. Rather, the Court held that even if *Wiley* controlled, Howard Johnson was not required to arbitrate. *Id.* at 263, 94 S.Ct. at 2244.

D. *This court must reconcile and interpret these confusing and conflicting precedents.*[5]

Since *Howard Johnson* followed both *Wiley* and *Burns,* and attempts to reconcile them, this court will focus on the holdings in

---

5. This court does not mean to suggest that the Supreme Court is normally "confusing and conflicting." Rather, the court recognizes that the myriad of factual situations which raise successorship questions force courts to create a patchwork of rules.

*Howard Johnson.* The Court started with the recognition that, as in the present case, "once gain we are faced with the problem of defining labor law obligations of a 'successor' employee to the employees of its predecessors." *Howard Johnson,* 417 U.S. at 250, 94 S.Ct. at 2237. The Court apparently also accepted the recognitions of the courts below "that the reasoning *Wiley* was to some extent inconsistent with our more recent decision in [*Burns* ]." *Id.* at 254, 94 S.Ct. at 2239. Significant to this case are the following statements in *Howard Johnson* after the Court's consideration of both *Wiley* and *Burns.*

> The question in this case is whether the Union may compel Howard Johnson to arbitrate, under the arbitration provisions of the collective-bargaining agreements signed by its predecessors, the extent of its obligations under those agreements to the predecessors' employees.

*Id.* at 250, 94 S.Ct. at 2237.

> The Grissoms had entered into separate collective-bargaining agreements with the Union covering employees at the two establishments. Both agreements contained dispute settlement procedures leading ultimately to arbitration. Both agreements also provided that they would be binding upon the employer's "successors, assigns, purchasers, lessees or transferees."

*Id.* at 251, 94 S.Ct. at 2238.

> Howard Johnson mailed the Grissoms a letter, which they later acknowledged and confirmed, clarifying that "(i)t was understood and agreed that the Purchaser ... would not recognize and assume any labor agreements between the Sellers ... and any labor organizations," and that it was further agreed that "the Purchaser does not assume any obligations or liabilities of the Sellers resulting from any labor agreements...."

*Id.* at 251–52, 94 S.Ct. at 2238.

> The Union filed this action in the state courts on July 21. Characterizing Howard Johnson's failure to hire all of the employees of the Grissoms as a "lockout" in violation of the collective-bargaining agreements, the Union sought a temporary restraining order enjoining this "lockout"

and an order compelling Howard Johnson and the Grissoms to arbitrate the extent of their obligations to the Grissom employees under the bargaining agreements.

*Id.* at 252–53, 94 S.Ct. at 2238.

> As Wiley was this Court's first experience with the difficult "successorship" question, its holding was properly cautious and narrow.
>
> > We hold that the disappearance by merger of a corporate employer which has entered into a collective bargaining agreement with a union does not automatically terminate all rights of the employees covered by the agreement, and that, in appropriate circumstances, present here, the successor employer may be required to arbitrate with the union under the agreement. [*Wiley,* 376 U.S.] at 548 [84 S.Ct. at 914]....

*Id.* at 254, 94 S.Ct. at 2239.

> Burns ... stressed that holding a new employer bound by the substantive terms of the pre-existing collective bargaining agreement might inhibit the free transfer of capital, and that new employers must be free to make substantial changes in the operation of the enterprise. 406 U.S., at 287–288, 92 S.Ct., at 1582–83.
>
> The courts below held that Wiley rather than Burns was controlling here on the ground that Burns involved an NLRB order holding the employer bound by the substantive terms of the collective-bargaining agreement, whereas this case, like Wiley, involved a § 301 suit to compel arbitration. Although this distinction was in fact suggested by the Court's opinion in *Burns,* see *id.,* at 285–86, 92 S.Ct. at 1581–82, we do not believe that the fundamental policies outlined in Burns can be so lightly disregarded.

*Id.* at 254–55, 94 S.Ct. at 2239–40.

> It would be plainly inconsistent with this view to say that the basic policies found controlling in an unfair labor practice context may be disregarded by the courts in a suit under § 301, and thus to permit the rights enjoyed by the new employer in a successorship context to depend upon the forum in which the union presses its

claims. Clearly the reasoning of Burns must be taken into account here.

*Id.* at 256, 94 S.Ct. at 2240.

Although it is true that both Wiley and this case involve § 301 suits to compel arbitration, the similarity ends there. Wiley involved a merger, as a result of which the initial employing entity completely disappeared. In contrast, this case involves only a sale of some assets, and the initial employers remain in existence as viable corporate entities, with substantial revenues from the lease of the motor lodge and restaurant to Howard Johnson. Although we have recognized that ordinarily there is no basis for distinguishing among mergers, consolidations, or purchases of assets in the analysis of successorship problems, see *Golden State Bottling Co. v. NLRA,* 414 U.S. 168, 182–183, n. 5, 94 S.Ct. 414, 424 [n. 5], 38 L.Ed.2d 388 (1973), we think these distinctions are relevant here for two reasons. First, the merger in Wiley was conducted "against a background of state law that embodied the general rule that in merger situations the surviving corporation is liable for the obligations of the disappearing corporation," *Burns,* 406 U.S. at 286, 92 S.Ct., at 1581, which suggests that holding Wiley bound to arbitrate under the predecessor's collective-bargaining agreement may have been fairly within the reasonable expectations of the parties. Second, the disappearance of the original employing entity in the Wiley merger meant that unless the union were afforded some remedy against Wiley, it would have no means to enforce the obligations voluntarily undertaken by the merged corporation, to the extent that those obligations vested prior to the merger or to the extent that its promises were intended to service a change of ownership. Here, in contrast, because the Grissom corporations continue as viable entities with substantial retained assets, the Union does have a realistic remedy to enforce their contractual obligations.

*Id.* at 256–57, 94 S.Ct. at 2240–41.

The claims which the union sought to compel Wiley to arbitrate were thus the claims of *Wiley's employees* as to the benefits they were entitled to receive in connection with their employment.

*Id.* at 259, 94 S.Ct. at 2241 (emphasis added).

The primary purpose of the Union in seeking arbitration here with Howard Johnson is not to protect the rights of Howard Johnson's employees; rather, the Union primarily seeks arbitration on behalf of the former Grissom employees who were not hired by Howard Johnson. It is the Union's position that Howard Johnson was bound by the pre-existing collective-bargaining agreement to employ all of these former Grissom employees, except those who could be dismissed in accordance with the "just cause" provision or laid off in accordance with the seniority provision. It is manifest from the Union's effort to obtain injunctive relief requiring the Company to hire all of these employees that this is the heart of the controversy here.

*Id.* at 260, 94 S.Ct. at 2242.

It is important here that this is not a case where the successor corporation is the "alter ego" of the predecessor where it is "merely a disguised continuance of the old employer." *Southport Petroleum Co. v. NLRB,* 315 U.S. 100, 106, 62 S.Ct. 452, 456, 86 L.Ed. 718 (1942). Such cases involve a mere technical change in the structure or identity of the employing entity, frequently to avoid the effect of the labor laws, without any substantial change in its ownership or management. In these circumstances, the courts have had little difficulty holding that the successor is in reality the same employer and is subject to all the legal and contractual obligations of the predecessor.

*Id.* at 261, 94 S.Ct. at 2242.

What the Union seeks here is completely at odds with the basic principles this Court elaborated in Burns. We found there that nothing in the federal labor laws "requires that an employer ... who purchases the assets of a business be obligated to hire all of the employees of the predecessor though it is possible that such an obligation might be assumed by the employer." 406 U.S. at 280 n. 5, 92 S.Ct., at 1578. See also *Golden State Bottling Co. v. NLRB,* 414 U.S. at 184 n. 6, 94 S.Ct., at 425 [n. 6].

Burns emphasized that "[a] potential employer may be willing to take over a moribund business only if he can make changes in corporate structure, composition of the labor force ... and nature of supervision." 406 U.S., at 287–88, 92 S.Ct., at 1582. We rejected the Board's position in part because "[i]t would seemingly follow that employees of the predecessor would be deemed employees of the successor, dischargeable only in accordance with provisions of the contract and subject to the grievance and arbitration provisions thereof. Burns would not have been free to replace Wackenhut's guards with its own except as the contract permitted." *Id.*, at 288, 92 S.Ct., at 1582. Clearly, Burns establishes that Howard Johnson had the right not to hire any of the former Grissom employees, if it so desired. The Union's effort to circumvent this holding by asserting its claims in a § 301 suit to compel arbitration rather than in an unfair labor practice context cannot be permitted.

*Id.* at 261–62, 94 S.Ct. at 2243 (footnote omitted).

At the same time, it recognizes that the employees of the terminating employer have no legal right to continued employment with the new employer, and avoids the difficulties inherent in the union's position in this case. This holding is compelled, in our view, if the protection afforded employee interests in a change of ownership by Wiley is to be reconciled with the new employer's right to operate the enterprise with his own independent labor force.

*Id.* at 264, 94 S.Ct. at 2244.

The question whether *Howard Johnson* is a "successor" is simply not meaningful in the abstract. Howard Johnson is of course a successor employer in the sense that it succeeded to operation of a restaurant and motor lodge formerly operated by the Grissoms. But the real question in each of these "successorship" cases is, on the particular facts, what are the legal obligations of the new employer to the employees of the former owner or their representative? *Id.* at 264 n. 9, 94 S.Ct. at 2244 n. 9.

 This court gleans the following principles from a consideration of *Wiley, Burns* and, more particularly, *Howard Johnson:*

(1) If the transfer is a mere sham, if the "successor" employer is, in effect, the same as the "predecessor" employer by way of substantial ownership, management, etc., then the successor is an alter ego of the predecessor, and is therefore subject to all obligations under the previously negotiated CBA, both as to employees hired by the successor and those not hired.

(2) If the transfer occurs through a merger, and the successor hires a substantial number of the predecessors's employees, particularly a majority, the successor is obligated under the preexisting CBA to arbitrate disputes with the union, and also *may* have assumed other obligations of the previously negotiated CBA as to *re-hired employees.*[6]

(3) In the absence of a sham or a merger, § 301 cannot be used to compel arbitration under a CBA, or as a basis for an unfair representation claim, rather than in an unfair labor practice context.

The foregoing is further substantiated by the following statements in *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.*, 10 F.3d 1563 (11th Cir. 1994), where the court stated:

Ordinarily the successor is not bound by substantive provisions of a preexisting collective bargaining agreement between the union and the predecessor. For example, it is not obligated to hire the employees of the predecessor (subject to the requirement it may not discriminate against union-member employees in hiring); it is free to set initial terms on which it will hire employees of the predecessor; and it is not bound to pay the same wages. The "right-

---

**6.** The *Wiley* court was faced with the issue of whether a successor was required by the preexisting CBA to arbitrate with the union on behalf of *rehired* employees. This court expresses no view as to whether the rule enunciated by *Wiley* would be extended to merger cases in which the union is attempting to assert against a successor rights under the CBA of employees who were not hired by the successor.

ful prerogative of owners independently to rearrange their businesses" is preserved.

. . . . .

The successorship doctrine protects the interests of members of the work force who have transferred from the predecessor employer to the successor employer.

. . . . .

Moreover, the duty that the district court imposed on Independent II as a matter of law is a duty to arbitrate, a duty that arises out of contract. A duty to arbitrate does not arise because a court thinks it is a good thing to require in the circumstances or because national labor policy favors it. A party cannot be required to submit to arbitration a dispute that it has not agreed to arbitrate.

. . . . .

As we have pointed out, in most respects a successor is only bound to collectively bargain and is not bound to any extent by an existing contract between the union and the predecessor.

. . . . .

If the status of successor rises out of a merger in which the original employer has disappeared and the new employer has hired all of the old employer's workers, the successor may be required to honor an arbitration provision of the preexisting collective bargaining agreement.

. . . . .

In contrast, if there is a mere sale of assets and the predecessor employer remains in business as a viable entity, the successor may not be required to honor the preexisting agreement to arbitrate.

. . . . .

By contrast, the alter ego doctrine focuses on "the existence of a disguised continuance of a former business entity or an attempt to avoid the obligations of a collective bargaining agreement, such as though a sham transfer of assets."

*Road Sprinkler,* 10 F.3d at 1566–68 (citations omitted).

■ This interpretation and reconciliation of *Wiley, Burns,* and *Howard Johnson* acknowledges the *Burns* Court's concern, as echoed in *Howard Johnson,* with preserving freedom of contract as a fundamental policy behind the national labor laws. *Burns,* 406 U.S. at 284, 92 S.Ct. at 1580; *Howard Johnson,* 417 U.S. at 255, 94 S.Ct. at 2239. Under this principle, successor employers, other than in the case of certain mergers and alter ego transactions, are free to refuse to hire any or all of the employees of a predecessor. *Howard Johnson,* 417 U.S. at 261, 94 S.Ct. at 2242. Moreover, this interpretation heeds the admonition of the Court in *Howard Johnson* that, in fashioning the federal common law, "we must necessarily proceed cautiously...." *Howard Johnson,* 417 U.S. at 256, 94 S.Ct. at 2240.

Plaintiffs argue, in short, that S & B was obligated to hire them under the preexisting CBA. The essence of plaintiffs' argument was rejected in the following language in *Howard Johnson* previously quoted:

> What the Union seeks here is completely at odds with the basic principles this Court elaborated in Burns. We found there that nothing in the federal labor laws requires that an employer who purchases the assets of business be obligated to hire all of the employees of the predecessor.... Clearly, Burns establishes that Howard Johnson had the right not to hire any of the former Grissom employees, if it so desired. The Unions' effort to circumvent this holding by asserting its claims in a § 301 suit to compel arbitration rather than in an unfair labor practice context cannot be permitted.

*Howard Johnson,* 417 U.S. at 261–62, 94 S.Ct. at 2243 (citations, internal quotations, and footnote omitted).

Plaintiffs' allegations may state a variety of section 8 offenses, all of which they may pursue before the NLRB. Specifically, refusal to hire plaintiffs based on union loyalty is precisely the type of conduct prohibited under section 8(a)(3) of the NLRA. Thus, this court's holding does not leave plaintiffs without a remedy. Rather, the remedy which plaintiffs may properly seek cannot be found under section 301.

Plaintiffs' suggestion that all successor employers who do the same work, in the same place, with the same employees assume the old CBA was rejected in *Burns,* where the Court stated:

> In many cases, of course, successor employers will find it advantageous not only to recognize and bargain with the union but also to observe the pre-existing contract rather than to face uncertainty and turmoil. Also, in a variety of circumstances involving a merger, stock acquisition, reorganization, or assets purchase, the Board might properly find as a matter of fact that the successor had assumed the obligations under the old contract. *Cf. Oilfield Maintenance Co.,* 142 NLRB 1384 (1963). *Such a duty does not, however, ensue as a matter of law from the mere fact that an employer is doing the same work in the same place with the same employees as his predecessor,* as the Board had recognized until its decision in the instant case.

*Burns,* 406 U.S. at 291, 92 S.Ct. at 1584 (emphasis added). Any argument that *Burns* does not apply to § 301 claims was rejected in *Howard Johnson.*

It would appear that plaintiffs have not alleged any facts that would suggest that S & B is an alter ego of Reeves, or that there was a merger, or that the transaction was otherwise a mere sham. Moreover, it would appear that plaintiffs cannot make such allegations, in light of their admissions that S & B is the largest competitor of Reeves. *See, e.g.,* Affidavit of Danny Claborn at 2. In light of this relationship between S & B and Reeves, this case becomes analogous to *Burns,* where there was a similar relationship between the predecessor and the successor.

In spite of this, the court will give the plaintiffs an opportunity to, after considering FED.R.CIV.P. 11, state whether they have any reasonable basis for alleging either such a merger or alter ego theory. Mere conclusory conspiracy allegations will not be sufficient. The mere fact that S & B did not wish to assume the obligations of the CBA, and that Reeves acquiesced in this position, is not evidence of a conspiracy. If this were so, the parties in *Howard Johnson* would be deemed to have conspired. The court will give plaintiffs ten days to file a statement of the facts, if any, which they can in good faith allege, which facts suggest either merger or alter ego status.