ROAD SPRINKLER FITTERS LOCAL UNION NO. 669, affiliated with the United Association of Journeymen & Apprentices of the Plumbing & Pipefitting Industry of the United States and Canada, AFL–CIO, Plaintiff–Counterclaim–Defendant–Appellee,

v.

INDEPENDENT SPRINKLER CORP.,
Defendant–Counterclaim–
Plaintiff–Appellant.

No. 91–3271.

United States Court of Appeals,
Eleventh Circuit.

Jan. 7, 1994.

Peter Reed Corbin, Corbin, Dickinson & Duvall, Jacksonville, FL, for Moore Pipe.

William W. Osborne, Jr. and Helene D. Lerner, Beins, Axelrod, Osborne, Mooney & Green, Washington, DC, for Road Sprinkler.

Before KRAVITCH, Circuit Judge, GODBOLD and OAKES [*], Senior Circuit Judges.

GODBOLD, Senior Circuit Judge:

This case concerns the successorship doctrine of labor law. Pursuant to that doctrine an employer found to be a "successor" to a predecessor employer may be bound to collectively bargain with the union that previously had a collective bargaining relationship with the predecessor, and in some circumstances the successor may even be bound by specific provisions of a collective bargaining agreement preexisting between the predecessor and the union.

On stipulated facts the district court granted the union's motion for summary judgment against an employer, Independent II, and denied Independent II's motion for summary judgment.[1] It applied the successorship doctrine, found Independent II to be a successor to employer Independent I, and ordered Independent II to arbitrate a dispute with the union. Because the successorship doctrine does not apply under the facts and circumstances of this case we reverse and direct that the district court enter judgment in favor of Independent II.

■ The union, Road Sprinkler Fitters Local No. 669, represented the employees of Moore Pipe & Sprinkler Co., a union contractor with which the union had a collective bargaining agreement. A grievance arose over whether Moore Pipe was improperly diverting work to Independent Sprinkler & Fire Protection Co. (Independent I), a non-union contractor. The union filed a § 301 suit[2] against Moore Pipe to compel it to arbitrate the grievance as provided in the collective bargaining agreement. A settlement was reached, signed by representatives of the union, Moore Pipe, and Independent I (though it was not a party to the suit). Its stated purpose was "to protect and preserve for the employees covered by this Agreement all work historically and traditionally performed by them." It provided that all work in the union's territory would be performed by Moore Pipe employees represented by the union. The agreement stated that it was binding on Moore Pipe, Independent I, and "the successors, assigns, trustees and administrators of any party hereto." It provided that any unresolved issue arising out of the settlement agreement would be referred to arbitration.

[*] Honorable James L. Oakes, Senior U.S. Circuit Judge for the Second Circuit, sitting by designation.

1. Independent's II's motion sought judgment in its favor with respect to all claims against it. Other defendants filed a separate motion for summary judgment. All motions of defendants were denied at the same time.

2. Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a). There is § 301 jurisdiction because the case concerns a con-

tract—a settlement agreement between an employer and a union. *United Paperworkers Int'l Union v. Int'l Paper Co.*, 920 F.2d 852, 859 (11th Cir.1991); *Retail Clerks Int'l Assn. v. Lion Dry Goods*, 369 U.S. 17, 27, 82 S.Ct. 541, 547, 7 L.Ed.2d 503 (1962). This court has jurisdiction of the appeal pursuant to 28 U.S.C. § 1291, because the summary judgment ordering the parties to arbitrate is an appealable final order. *Thomas McKinnon Securities, Inc. v. Salter*, 873 F.2d 1397, 1399 (11th Cir.1989).

Independent Sprinkler Corporation (Independent II) was subsequently organized and operated as a non-union shop, performing the same type of work as Independent I. Allegedly it was awarded contracts for work within the union's territory. The union objected and demanded that Moore Pipe, Independent I, and Independent II submit to arbitration pursuant to the arbitration provision of the settlement agreement. All three companies declined, and the union filed this suit to require arbitration, alleging that Independent II was "an alter ego and/or a successor" of Independent I. It also claimed breach of contract damages for alleged breach of the settlement agreement and asked specific performance of the agreement as well. The district court dismissed the contract claims and granted summary judgment in favor of the union requiring all three companies to arbitrate. Whether the settlement agreement had been breached was described by the court as an issue left to the arbitrator. All three defendants appealed. Moore Pipe and Independent I have since participated in arbitration, which has been completed, and they have withdrawn their appeals. Left in question is whether the district court correctly held that the successorship doctrine requires Independent II to arbitrate pursuant to the provisions of the settlement agreement. We hold that the successorship doctrine has no application to this case and reverse the grant of summary judgment in favor of the union and against Independent II.

The district court's decision was not based on a theory that Independent II is a "successor" to Independent I under contract law principles and is therefore bound by the provision of the settlement agreement which said that the agreement is binding on Moore Pipe and Independent I and "the successors, assigns, trustees and administrators" of any party. Rather the court based its decision on the successorship doctrine of labor law which, as a matter of law and without regard to contract law principles, imposes the status of successor on an employer and places certain obligations upon it as such successor.[3]

## I. THE UNDERPINNINGS OF THE SUCCESSORSHIP DOCTRINE.

 A successor relationship created by labor law principles arises by operation of law and is not dependent upon agreement by the successor that it should have successor status. This labor-law based relationship protects the collective bargaining interests of employees of a predecessor employer who have been employed by a successor employer that has substantial and sufficient continuity with the predecessor. The doctrine is an extension of the presumption in labor law that during the term of a collective bargaining agreement and one year thereafter the certified union is the proper bargaining agent. *NLRB v. Burns International Security Services, Inc.*, 406 U.S. 272, 278–79, 92 S.Ct. 1571, 1577, 32 L.Ed.2d 61 (1972); *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 36–39, 107 S.Ct. 2225, 2232–2234, 96 L.Ed.2d 22 (1987). The successor is, therefore, required to engage in collective bargaining with the union. This continuation of the obligation to bargain tends to stabilize industrial relations by protecting the employees of the predecessor who have joined the work force of the successor at a peculiarly vulnerable time during which labor relations might be disturbed by actions or policies of the successor employer or of the employees themselves. *Fall River*, 482 U.S. at 38–39, 107 S.Ct. at 2233.

 Ordinarily the successor is not bound by substantive provisions of a preexisting collective bargaining agreement between the

3. This case has been obfuscated by imprecise use of the term "successor." Pleadings, motions and briefs of the parties in the district court shifted at will from discussion, without clear identification, of successorship created by contract and successorship created by operation of labor law principles without regard to contract (and sometimes as though both types of status were the same). The district court dismissed the union's breach of contract claim (i.e., breach of the settlement agreement) and left that issue for the arbitrator. The union has not raised as an issue on appeal the dismissal of its contract claim. The district court only relied upon successorship as created by labor law principles. The union acknowledges that the issue before us concerns successorship under established federal labor law principles and that the district court's decision was based on those principles (Brief pp. 8 and 9).

union and the predecessor. *Id.* at 40, 107 S.Ct. at 2234. For example, it is not obligated to hire the employees of the predecessor (subject to the requirement that it may not discriminate against union-member employees in hiring); it is free to set initial terms on which it will hire employees of the predecessor; and it is not bound to pay the same wages. *Id.* The "rightful prerogative of owners independently to rearrange their businesses" is preserved. *Id.*

The Seventh Circuit has outlined some of the criteria useful in determining whether one employer is the successor of another:

> [a] there has been a substantial continuity of the same business operations; [b] the new employer uses the same plant; [c] the same or substantially the same work force is employed; [d] the same jobs exist under the same working conditions; [e] the same supervisors are employed; [f] the same machinery, equipment, and methods of production are used; and [g] the same product is manufactured or the same service [is] offered.

*Int'l Union of Operating Engineers v. Centor Contractors,* 831 F.2d 1309, 1312 (7th Cir. 1987) (footnote omitted).

■ We do not need to analyze in detail the relations between Independent I and Independent II that might be relevant to the *Int'l Union* criteria. Even if some of those criteria are present between these two entities, the successorship doctrine has no application to this case. There has been no collective bargaining *relationship* between the union and Independent I to be "passed on" to Independent II as successor to Independent I. Independent I does not have, and never had, a collective bargaining *relationship* with the union. The only preexisting collective bargaining relationship was between Moore Pipe and the union, and the union does not contend that Moore Pipe is the predecessor of Independent II. The successorship doctrine may not be utilized to force an alleged successor employer, Independent II, into a collective bargaining relationship in which its alleged predecessor, Independent I, was not a participant.

The union asserts that it is "protect[ing] union-represented Moore Pipe employees from diversion of bargaining unit work to Independent I or its 'successor' [Independent II] during the life of the settlement agreement." The successorship doctrine protects the interests of members of the work force who have transferred from the predecessor employer to the successor employer. Here, in a dispute over allocation of work between employees of a union shop (Moore Pipe) and employees of a non-union shop (Independent II), the doctrine is asserted *against* the interests of transferred employees (who transferred to Independent II from Independent I, which had no bargaining relationship with the union) and *for the benefit* of the work force of Moore Pipe (whose employees have not transferred at all). This stands successorship on its head.

■ Moreover, the duty that the district court imposed on Independent II as a matter of law is a duty to arbitrate, a duty that arises out of contract. A duty to arbitrate does not arise because a court thinks it is a good thing to require in the circumstances or because national labor policy favors it. A party cannot be required to submit to arbitration a dispute that it has not agreed to arbitrate. *Steelworkers v. Warrior & Gulf Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960).

■ As we have pointed out, in most respects a successor is only bound to collectively bargain and is not bound to any extent by an existing contract between the union and the predecessor. In some narrow circumstances, however, there may be an exception to the rule that the successor inherits only a duty to bargain and does not inherit a preexisting collective bargaining contract. If the status of successor arises out of a merger in which the original employer has disappeared and the new employer has hired all of the old employer's workers, the successor may be required to honor an arbitration provision of the preexisting collective bargaining agreement. *John Wiley & Sons, Inc., v. Livingston,* 376 U.S. 543, 548, 84 S.Ct. 909, 913, 11 L.Ed.2d 898 (1964); *see* also *Esmark, Inc. v. NLRB,* 887 F.2d 739, 750–51 (7th Cir.1989). In contrast, if there is a mere sale of assets and the predecessor employer re-

mains in business as a viable entity, the successor may not be required to honor the preexisting agreement to arbitrate. *Howard Johnson Co. v. Detroit Local Joint Executive Board,* 417 U.S. 249, 257, 94 S.Ct. 2236, 2240, 41 L.Ed.2d 46 (1974). This is not a *Wiley* case. There has been no merger. Independent II has hired some but not all of Independent I's employees. Independent I had no collective bargaining agreement or relationship with the union. It has hired none of Moore Pipe's employees. The union is not incapable of obtaining arbitration on the issue of alleged diversion of work from Moore Pipe. Its collective bargaining agreement with Moore Pipe contained an arbitration clause, and the federal court ordered Moore Pipe (and Independent I) to arbitrate, and they have done so.

The district court erred in granting summary judgment in favor of the union and against Independent II based upon the successorship issue and in denying Independent II's motion for summary judgment based upon that issue.

## II. ALTER EGO.

■■■■ The union alleged in its complaint that Independent II was required to arbitrate because it was formed as "an alter ego of and/or a successor corporation" to Independent I . . . and is bound by the terms and conditions of the [settlement] agreements . . . entered into by Independent I.[4] Independent II, by counterclaim and later in its motion for summary judgment, alleged that it was neither alter ego of nor successor to Independent I. Despite having alleged alter ego status, the union did not raise that issue in its motion for summary judgment or in its proposed conclusions of law submitted

in support of its motion. It did not assert alter ego in opposition to Independent II's motion for summary judgment, which alleged that Independent II was not the alter ego of Independent I. The district court therefore declined to address the alter ego status as an issue.

Although the Complaint alleges that Independent II is either the alter ego of and/or the successor to Independent I, the issue of alter ego status is not raised by the plaintiff in either its motion for summary judgment, or its subsequent [proposed] conclusions of law. Therefore, although the defendants briefed the issue of alter ego status, the Court will not address it in this Order.

Opinion and Order, p. 6, n. 2, 1991 WL 64044. The court was correct in its ruling. It could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment. *Cf., Lazzara v. Howard A. Esser, Inc.,* 802 F.2d 260, 269 (7th Cir.1986) (a ground not pressed in the district court in opposition to a motion for summary judgment is to be treated by the district court as abandoned). Moreover, on appeal the union has not raised as an issue the refusal of the district court to consider the alter ego claim. The district court's refusal could not, therefore, be considered as an issue on appeal. *FSLIC v. Haralson,* 813 F.2d 370, 373 (11th Cir.1987); *Self-directed Placement Corp. v. Control Data Corp.,* 908 F.2d 462, 466 (9th Cir.1990); *Cavic v. Pioneer Astro Indus.,* 825 F.2d 1421, 1425 (10th Cir.1987). Alter ego is simply no longer an issue in this case.

For reasons we have set out, Independent II was entitled to summary judgment in its

---

4. The Seventh Circuit has described the distinct differences between alter ego and successorship.

 We begin by noting that the alter ego and successorship inquiries are distinct. Whether one employer is a successor of another depends on a number of factors, some of which were recently enunciated by this court, including whether:

 [reciting the factors set out above in text at p. 1567.]

 \* \* \* \* \* \*

 By contrast, the alter ego doctrine focuses on "the existence of a disguised continuance of a former business entity or an attempt to avoid the obligations of a collective bargaining agreement, such as through a sham transfer of assets." *Penntech Papers, Inc. v. NLRB,* 706 F.2d 18, 24 (1st Cir.1983). In sum " '[u]nlawful motive or intent are critical inquiries in an alter ego analysis. . . .' " *Iowa Express Distribution, Inc. v. NLRB,* 739 F.2d 1305, 1311 (8th Cir.1984) (quoting *Penntech Papers,* 706 F.2d at 24) (comparing alter ego and single employer doctrines).
*Int'l Union of Operating Engineers v. Centor Contractors, supra.*

favor on the successorship issue, the only issue remaining in the case.

## III. CONCLUSION.

The decision of the district court is REVERSED. The case is REMANDED to the district court with directions to enter a final judgment in favor of Independent Sprinkler Corporation (Independent II).