**Robyn NOWLIN, Plaintiff,**

v.

**JONES INTERCABLE, INC., Defendant.**

**No. CV198–258.**

United States District Court, S.D. Georgia, Augusta Division.

Feb. 7, 2000.

E. Brian Watkins, Augusta, GA, Luther McDaniel, Jr., Luther McDaniel, Jr. & Assoc., Augusta, GA, for Robyn Nowlin, plaintiff.

James B. Ellington, Hull, Towill, Norman, Barrett & Salley, PC, Augusta, GA, for Jones Intercable, Inc., defendant.

## ORDER

BOWEN, Chief Judge.

Before the Court in the captioned case is Defendant's Motion for Summary Judgment. For the reasons given below, Defendant's motion is **GRANTED.**

### I. Background

Plaintiff is suing Defendant for employment discrimination. Plaintiff claims that Defendant singled her out for discipline and demotion because she is a woman.

Defendant delivers cable television to its customers in various cities. In 1987, Plaintiff went to work for Defendant in Augusta, Georgia as a service technician. Plaintiff was responsible for correcting technical problems. Two years later, Plaintiff was promoted to a supervisory position. Plaintiff supervised crews of repairmen who went to customers' houses to correct problems with their cable television service. Plaintiff served in this supervisory position for seven years without incident.

Problems arose when Mike Newbern ("Newbern") arrived in 1996 as part of a new management team. Newbern was responsible for improving the quality of Defendant's operations in Augusta. Newbern occupied a managerial position over Plaintiff. Compared with his relaxed predecessor, Newbern's style of management was rigorous and demanding. Newbern's style of management eventually caused problems for Plaintiff. In addition to problems with the new management, Plaintiff also had trouble getting along

with co-workers of equal rank. For example, on one occasion, Plaintiff exposed her breasts to Danny Hughes and William McGee during an altercation and said, "Bite these." (Nowlin Dep. at 132–33.)

Newbern found various deficiencies in Plaintiff's work habits. For example, Newbern chastised Plaintiff for arriving late, for taking numerous smoking breaks and coffee breaks, for acting and dressing unprofessionally, and for inaccurately documenting the performance of the workers she supervised. Newbern initially tried to improve Plaintiff's job performance by coaching her and giving her feedback. (Newbern Aff. ¶ 15.) Plaintiff received a low annual performance rating in December 1996. Another male supervisor also received a low annual performance rating. (*Id.* ¶ 14.)

After these problems continued, Newbern and Tony Vaughn ("Vaughn") met with Plaintiff in August 1997. Vaughn was Plaintiff's direct supervisor. Newbern was Vaughn's boss. Newbern and Vaughn documented the concerns addressed in the August 1997 meeting. The problems discussed in this meeting were similar to the problems previously discussed with Plaintiff: spending too much time in the office and not enough time in the field, taking too many coffee and smoking breaks, arriving late to work, dressing inappropriately, and inaccurately completing paperwork. (Ex. 26 to Nowlin Dep.)

Plaintiff worked with Defendant's Human Resources Manager to improve her job performance. Together, they produced a written "action plan." In this plan, Plaintiff promised to arrive at work early, to be more professional, to take only one break in the morning and one break in the afternoon, and to complete paperwork more carefully. (Ex. 28 to Nowlin Dep.)

Defendant alleges that Plaintiff's job performance remained unsatisfactory. Defendant claims that Plaintiff failed to carry out the promises in her action plan. In particular, Vaughn's memorandum of December 16, 1997 charges that Plaintiff still took too many breaks, that errors persisted in her paperwork, and that her work in the field was behind schedule. (Ex. 36 to Nowlin Dep.) Because of these persistent problems, Plaintiff was placed on a ninety day period of probation.

Defendant contends that Plaintiff's deficient job performance continued. Vaughn's memorandum of February 25, 1998 charges, among other problems, that Plaintiff turned in paperwork late, forgot to investigate problems with field work, took lengthy smoking breaks, and turned in poor paperwork. (Ex. 38 to Nowlin Dep.)

In March 1998, Plaintiff was demoted from her supervisory position to the position of service technician. Newbern's memorandum of March 2, 1998 states that the reason for Plaintiff's demotion was her continued deficient job performance. (Ex. 43 to Nowlin Dep.) Plaintiff was replaced by a male, William McGee. Plaintiff was offered an opportunity to apply for other positions in Defendant's company but decided not to do so. Plaintiff resigned in May 1998.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in April 1998. In this charge, Plaintiff complains only that she "was disparately disciplined and demoted on the basis of [her] gender." (Def.'s Ex. 10.) The EEOC issued her a right-to-sue letter in September 1998.

Plaintiff brought this suit in December 1998. In her judicial Complaint, Plaintiff claims that Defendant demoted her, disciplined her, and subjected her to a hostile working environment because of her gender in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e – 2000e–17 ("Title VII"). Plaintiff also claims that Defendant violated the Equal Pay Act, 29 U.S.C. § 206(d).

## II. Requirements for Summary Judgment

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and ... the moving

party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must view the facts in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and must draw "all justifiable inferences in [its] favor," *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1437 (11th Cir.1991) (en banc) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). How to carry this burden depends on who bears the burden of proof at trial. *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993). If the *movant* bears the burden of proof at trial, that party "must show that, on all the essential elements of its case, ... no reasonable jury could find for the non-moving party." *Four Parcels,* 941 F.2d at 1438. On the other hand, if the *non-movant* has the burden of proof at trial, the movant may carry the initial burden in one of two ways—by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. *See Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 606–08 (11th Cir.1991) (explaining *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Jones v. City of Columbus,* 120 F.3d 248, 254 (11th Cir.1997) (per curiam). A mere conclusory statement that the non-movant cannot

meet the burden at trial is insufficient. *Clark,* 929 F.2d at 608.

If—and only if—the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." *Id.* Again, how to carry this burden depends on who bears the burden of proof at trial. If the *movant* has the burden of proof at trial, the non-movant may avoid summary judgment only by coming forward with evidence from which a reasonable jury could find in its favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. If the *non-movant* bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carries its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." *Fitzpatrick,* 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." *Id.* at 1116–17. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. *See Morris v. Ross,* 663 F.2d 1032, 1033–34 (11th Cir.1981). Rather, the non-movant must respond by affidavits or as otherwise provided by Fed.R.Civ.P. 56.

The clerk has given the non-moving party notice of the summary judgment motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and of the consequences of default (Doc. No. 16). Therefore, the notice requirements of *Griffith v. Wainwright,* 772 F.2d 822, 825 (11th Cir.1985) (per curiam), are satisfied. The time for filing

materials in opposition has expired, and the motion is ripe for consideration.

### III. Analysis

Plaintiff's Complaint advances at least five claims. The Complaint alleges that Defendant subjected Plaintiff to a hostile working environment, that Defendant disciplined Plaintiff more severely because she is a woman, that Defendant demoted Plaintiff because she is a woman, that Defendant paid males more than females for comparable work, and that Defendant has a practice of limiting advancement opportunities for female employees. The last two claims have been abandoned.

Plaintiff seeks relief under Title VII and under the Equal Pay Act. On various grounds, Defendant argues that it is entitled to summary judgment on all claims. Each claim will be considered in turn.

### A. Title VII Claims Not Mentioned in the EEOC Charge

■ Before filing suit in district court, employment discrimination plaintiffs must first file a charge of discrimination with the EEOC. *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 449 (11th Cir.1993). Any claim not appearing in the EEOC charge is thus subject to dismissal. Plaintiff can sue only for those claims which appear in the EEOC charge or "which could reasonably be expected to grow out of the charge of discrimination." *Increase Minority Participation by Affirmative Change Today of Northwest Florida v. Firestone*, 893 F.2d 1189, 1196 (11th Cir.1990) (internal quotation marks omitted) (quoting *Griffin v. Carlin*, 755 F.2d 1516, 1522 (11th Cir.1985)).

■ Plaintiff's EEOC charge alleges only that she was "disparately disciplined and demoted on the basis of [her] gender." (Def.'s Ex. 10.) These allegations do not reasonably relate to Plaintiff's Title VII claims for unequal pay. *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 589 n. 8 (11th Cir.1994). Likewise, these allegations do not reasonably relate to Plaintiff's claim for a hostile work environment. *Cabiness v. YKK (USA), Inc.*, 859 F.Supp. 582, 587 (M.D.Ga.1994), *aff'd* 98 F.3d 1354 (11th Cir.1996). Therefore, summary judgment is appropriate as to Plaintiff's Title VII claims for unequal pay and for a hostile work environment.[1] Plaintiff's remaining claims will be analyzed on their merits.

### B. Discriminatory Discipline Claim

Plaintiff alleges that Defendant's managers disciplined her more severely than they disciplined male co-workers who committed similar infractions of company rules. Defendant argues that this claim fails because Plaintiff cannot establish a prima facie case.

■ To establish a prima facie case of discriminatory discipline, Plaintiff must show that she is a member of a protected class, that she engaged in misconduct similar to the misconduct of workers outside the protected class, and that similarly situated workers outside the protected class received more favorable treatment. *Jones v. Bessemer Carraway Med. Center*, 137 F.3d 1306, 1311 n. 6, *modified*, 151 F.3d 1321 (11th Cir.1998) (per curiam). Plaintiff must show that the "quantity and quality of the comparator's misconduct [is] nearly identical." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir.1999). Plaintiff is a member of a protected class. Plaintiff offers insufficient evidence, however, that other males were punished less severely for similar misconduct.

The discipline about which Plaintiff complains is summarized in Vaughn's memorandum of December 18, 1997. (Ex. 36 to Nowlin Dep.) In this memorandum, Vaughn charges that Plaintiff failed to complete field work on schedule, that Plaintiff took too many breaks, and that Plaintiff's paperwork was inaccurate. (*Id.*)

---

1. Deficiencies in the EEOC charge do not affect Plaintiff's claims under the Equal Pay Act. Unlike Title VII, the Equal Pay Act does not require plaintiffs to exhaust administrative remedies. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1527 (11th Cir.1992). Plaintiff, however, has abandoned her claims under the Equal Pay Act.

Because these problems had continued for a long time, Plaintiff was placed on probation.[2] These problems continued during Plaintiff's probation period, (Ex. 38 to Nowlin Dep.) As a result, Plaintiff was demoted. (Ex. 43 to Nowlin Dep.)

To survive summary judgment, Plaintiff must show that male co-workers committed nearly identical offenses but were neither placed on probation nor demoted. Plaintiff refers to evidence that she took no more breaks than her male co-workers took.[3] (Willingham Dep. at 128.) Plaintiff also refers to evidence that other service supervisors' field work was inadequate. (Keith Dep. at 9.) While this evidence might suggest that Plaintiff was treated unfairly, it cannot sustain her discriminatory discipline claim.

Plaintiff's evidence is insufficient because it fails to show that the quantity and quality of her problems on the job were like the quantity and quality of her co-workers' problems on the job. Plaintiff was placed on probation and eventually demoted because she failed to resolve the problems that she agreed to resolve in her action plan of August 27, 1997. (Exs. 36 and 43 to Nowlin Dep.) This discipline was not the result of an isolated incident. Plaintiff was placed on probation because she continually failed to complete field work on time, continually took too many breaks, and continually turned in inaccurate paperwork. (Ex. 36 to Nowlin Dep.) What Plaintiff must show, then, is that other male co-workers with similarly pervasive performance problems were neither demoted nor placed on probation. *See*

*Maniccia,* 171 F.3d at 1369 (distinguishing isolated violations from repeated violations). Plaintiff's evidence does not show the similarity of circumstances needed to sustain her claim. Accordingly, Defendant is entitled to summary judgment on Plaintiff's discriminatory discipline claim. *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997) (per curiam).

## C. Discriminatory Demotion Claim

Plaintiff claims that she was demoted because she is a woman. Defendant argues that it is entitled to summary judgment on this claim because Plaintiff cannot establish a prima facie case of discrimination and because it demoted her for legitimate, non-discriminatory reasons.

On summary judgment, Plaintiff can establish her case in one of two ways. One is by direct evidence—evidence from which a reasonable jury could conclude that Defendant more probably than not demoted Plaintiff because of her gender. *Wright v. Southland Corp.,* 187 F.3d 1287, 1293, 1300 (11th Cir.1999). An obvious example of direct evidence is a statement by the decision-maker that he is demoting an employee because she is a woman. *Id.* at 1294. The other method of proof is circumstantial evidence—what is typically called the *McDonnell Douglas* prima facie case. *Id.* at 1293.

Plaintiff refers to no direct evidence of discrimination. Plaintiff admits in her deposition that no one told her that she was demoted because she was a woman. (Nowlin Dep. at 159.) Plaintiff refers to

---

**2.** The ideal comparator, therefore, is another service supervisor who failed to satisfy his work schedule, who took too many breaks, and who turned in inaccurate paper work. *Jones,* 137 F.3d at 1312 (distinguishing a worker who was unprepared and tardy from a worker who was unprepared and insubordinate and whose previous work record was deficient). Of course, an ideal comparator may very well not exist. *Maniccia,* 171 F.3d at 1369 (citing *Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 19 (1st Cir. 1989)). Plaintiff, however, has not referred to a sufficiently similar comparator.

**3.** Plaintiff also refers to evidence that her dress was appropriate, (Waggoner–Ross Dep. at 31), but this evidence is irrelevant. The issue is not whether Plaintiff's discipline was deserving. The issue is whether other male co-workers received less discipline for similar offenses. Plaintiff refers to generalized assertions that she and her workers were treated unfairly, (Keith Dep. at 6; Waggoner–Ross Dep. at 37), but these generalized assertions do not establish a prima facie case of disparate treatment. *Holifield v. Reno,* 115 F.3d 1555, 1563 (11th Cir.1997) (per curiam).

no statements or circumstances which, alone, would allow a reasonable jury to infer discrimination. Because Plaintiff offers no direct evidence, Plaintiff must establish a *McDonnell Douglas* prima facie case using circumstantial evidence. *Wright*, 187 F.3d at 1293.

■ In this case, Plaintiff can establish a *McDonnell Douglas* prima facie case of disparate treatment by showing that she is a member of a protected class, that she was demoted, that she was qualified for the supervisory position from which she was removed, and that she was replaced by someone outside her protected class. *Underwood v. Northport Health Serv., Inc.*, 57 F.Supp.2d 1289, 1300 (M.D.Ala. 1999); *see also Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998) (ADEA case). Once Plaintiff establishes a prima facie case of discrimination, Defendant must show that it demoted Plaintiff for a legitimate, nondiscriminatory reason. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If Defendant offers a legitimate, nondiscriminatory reason, Plaintiff can avoid summary judgment only by presenting evidence from which a reasonable jury could infer that Defendant's proffered nondiscriminatory reason is merely a pretext for discrimination. *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1269 (11th Cir.1999).

### 1. Plaintiff's Prima Facie Case

■ Plaintiff has established a prima facie case of gender discrimination. Plaintiff is a member of a protected class, she was demoted, and she was replaced by a male outside the protected class. Defendant argues that her unsatisfactory job performance proves that she was not qualified. In the context of a demotion case, however, the fact that Plaintiff held her supervisory position for nine years shows that she was qualified for the job. *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1360 (11th Cir.1999); *Underwood*, 57 F.Supp.2d at 1300 (citing *Walker v. Mortham*, 158 F.3d 1177, 1189 (11th Cir.1998)). Plaintiff's job perfor-

mance is more relevant in evaluating the legitimacy of Defendant's reason for demoting her.

### 2. Defendant's Legitimate, Nondiscriminatory Reason

■ Defendant explains that Plaintiff was demoted because of her deficient job performance, not because of her gender. Defendant has come forward with evidence that Plaintiff's job performance problems persisted during her ninety day probationary period. According to Vaughn, Plaintiff turned in paperwork late, forgot to investigate problems with field work, continued to take lengthy smoking breaks, and continued to turn in poor paperwork. (Ex. 38 to Nowlin Dep.) Defendant offers Plaintiff's allegedly poor job performance as the reason for her demotion. (Ex. 43 to Nowlin Dep.) Defendant has therefore satisfied its burden of articulating a legitimate, nondiscriminatory reason for the decision to demote Plaintiff. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

### 3. Evidence of Pretext

■ To survive summary judgment, Plaintiff must come forward with evidence that Defendant's articulated legitimate, nondiscriminatory reason is merely a pretext for unlawful discrimination. *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089. Plaintiff can carry this burden in two ways. One way is to show that gender was more likely the reason for her demotion. *Id.* The other way is to show that Defendant's explanation is unworthy of belief. *Id.* Plaintiff must come forward with evidence from which a reasonable jury could conclude that her deficient job performance was not the real reason for her demotion. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir.1997).

Defendant insists that Plaintiff was demoted because of her poor job performance. Plaintiff counters that this reason is pretextual. For Plaintiff's argument to succeed, Plaintiff must "show either that

[s]he did not violate the work rule or that, if [s]he did, other [males] who engaged in similar acts were not similarly treated." *Alphin v. Sears, Roebuck & Co.*, 940 F.2d 1497, 1501 n. 1 (11th Cir.1991) (quoting *Anderson v. Savage Lab., Inc.*, 675 F.2d 1221, 1224 (11th Cir.1982)). Plaintiff does not challenge the facts underlying Defendant's conclusion that her performance on the job was poor. Plaintiff argues instead that males were treated more leniently than she was treated.

■ The record discloses evidence that some males were treated differently. For example, one of the reasons that Defendant found Plaintiff's work performance deficient was that Plaintiff took too many smoking breaks and coffee breaks. (*E.g.*, Ex. 38 to Nowlin Dep.) Plaintiff, however, testifies that other males were not disciplined for taking breaks to smoke and drink coffee. (Nowlin Dep. at 53; *see also* Willingham Dep. at 128.) Another reason that Plaintiff was demoted was her tardiness. (Ex. 38 to Nowlin Dep.) Plaintiff charges that other male employees got away with coming late to work. (Nowlin Dep. at 108–09.) Plaintiff complains that Newbern criticized her professional image but did not criticize the professionalism of other male supervisors. (*Id.* at 53.) According to Plaintiff, her replacement, William McGee, deserved such criticism. Specifically, Plaintiff accuses William McGee of flicking people off and grabbing his crotch. (*Id.* at 126–28.) Plaintiff was chastised for wearing tennis shoes in violation of a rule requiring field supervisors to wear work boots. Other male supervisors allegedly wore tennis shoes without penalty. (*Id.* at 78, 421.) Plaintiff concludes from this evidence that she was singled out for demotion because she is a woman.

Plaintiff's evidence does not create a genuine issue of material fact for trial. Plaintiff's own deposition testimony belies her argument that Defendant singled her out because of her gender. For example, Plaintiff admits that some of the employees who enjoyed smoking breaks without restriction are women. (*Id.* at 374.)

Plaintiff lists several co-workers who came late to work without penalty, but one of them is a woman. (*Id.* at 108–09.) Also, Defendant fired a male employee for repeated tardiness. (Willingham Dep. at 9.) Just as Newbern scrutinized Plaintiff's job performance, he also unduly scrutinized the job performance of another male employee. (*Id.* at 18; *see also* Nowlin Dep. at 71–74.)

Furthermore, Plaintiff's shortcomings on the job were far more severe than any of her co-workers' alleged shortcomings. While some co-workers may have committed offenses similar to Plaintiff's offenses, there is no evidence that their problems were as pervasive as Plaintiff's problems. Defendant's articulated reason for demoting Plaintiff is that her job performance was *consistently* deficient and that she *repeatedly* failed to adhere to the action plans she established for herself. Plaintiff refers to no other co-worker with similarly pervasive problems.

In short, Plaintiff's evidence of pretext is illusory. Plaintiff argues that Defendant singled her out for discipline, but the record shows that Defendant disciplined males as well as females. Even where Plaintiff's testimony shows that some males may have evaded discipline, females likewise evaded discipline. Thus, there is little or no reason to infer that Defendant is hiding some discriminatory reason for demoting Plaintiff.

In her deposition testimony, Plaintiff makes other generalized allegations in support of her argument that Defendant's reason for demoting her is pretextual. For example, she explains generally that "[other male supervisors] were treated with much more respect, daily. They weren't talked down to. They weren't made fun of. They weren't diciplined on a—they weren't ridden." (Nowlin Dep. at 169–70.) Plaintiff also testifies that Mike Newbern "clearly had a problem dealing with women." (*Id.* at 93.) Plaintiff avers that Newbern and her replacement, William McGee, belong to a clique of male racquetball play-

ers who excluded Plaintiff to her professional disadvantage. (*Id.* at 56.) One revealing excerpt reads:

Q: And did you think that incident had anything to do with your gender?

A: What, the downtime? No. It just had—it had the same thing to do with the problem between me and Mike. It goes back to everything else. I never did anything good enough for him. I should have always thought a different way.

Q: And you feel that that was—do you or do you not feel that those differences with Mr. Newbern were because of your gender?

A: I feel like they were, yes.

(*Id.* at 193.) Generalized allegations like these are insufficient to create an issue of fact for trial. *Mayfield v. Patterson Pump Co.,* 101 F.3d 1371, 1376 (11th Cir. 1996).

There is insufficient evidence of pretext to belie Defendant's reason for demoting Plaintiff. No reasonable jury could conclude that gender played any role in Plaintiff's demotion. Therefore, Defendant is entitled to summary judgment on Plaintiff's demotion claim.

### D. Hostile Work Environment Claim

As explained earlier, Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim because Plaintiff failed to raise this claim in her EEOC charge. Even if Plaintiff's claim for a hostile work environment were properly before the Court, it would fail on its merits.

█ To establish a hostile work environment claim, Plaintiff must show that she is female, that she suffered unwelcome harassment, that the harassment was based on her gender, and that the harassment affected the condition of her employment. *Cross v. State of Alabama, State Dep't of Mental Health & Mental Retardation,* 49 F.3d 1490, 1504 (11th Cir.1995). Plaintiff is a female, and Plaintiff claims that she suffered unwelcome harassment, primarily at the hands of Mike Newbern.

Plaintiff, however, has failed to produce evidence that the purported harassment affected the terms and conditions of her employment. Therefore, Plaintiff cannot establish a prima facie case of harassment.

█ Plaintiff must come forward with evidence of gender abuse that is sufficiently severe or pervasive to alter the conditions of her employment and which creates an abusive working environment. *Edwards v. Wallace Community College,* 49 F.3d 1517, 1521 (11th Cir.1995) (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 114 S.Ct. 367, 370–71, 126 L.Ed.2d 295 (1993)). To determine whether Plaintiff's evidence is sufficient, several factors must be considered. These factors are the frequency and severity of the discriminatory conduct, whether the conduct was threatening or humiliating, and whether the conduct unreasonably interfered with Plaintiff's performance at work. *Id.* at 1521–22.

### 1. Plaintiff's Evidence

Plaintiff lists the evidence of alleged harassment in her deposition. Plaintiff attributes all but one incident to Mike Newbern. This evidence consists of twelve enumerated allegations:

1) that Newbern threw paper wads at her;

2) that Newbern would tell her that her shoes were untied;

3) that Newbern did not believe her when she said that her pager was broken and tested it in a discourteous manner;

4) that Newbern inappropriately and unnecessarily assumed responsibility for one of Plaintiff's field assignments;

5) that Newbern constantly reprimanded Plaintiff about her professional image;

6) that Newbern and other male supervisors made fun of Plaintiff at lunch if and when Plaintiff said something "that came out sounding stupid;"

7) that Newbern unfairly lowered the otherwise favorable job performance

ratings that Plaintiff gave to the people who worked under her;

8) that Newbern disparaged Plaintiff's efforts to train other workers;

9) that Newbern reprimanded Plaintiff for wearing tennis shoes but did not reprimand other male supervisors for wearing tennis shoes;

10) that Tony Vaughn reprimanded her for wearing her shirttail untucked;

11) that Newbern limited Plaintiff's smoking breaks; and

12) that Newbern chastised Plaintiff for drinking coffee in the morning, even for drinking her first cup.

(Nowlin Dep. at 55–68; 78–81.)

### 2. Analysis of the Evidence Using the Edwards Factors

 Newbern appears to have grated on Plaintiff as long as they worked together. (*Id.* at 78.) Although the alleged harassment may have been frequent, it was not at all severe. Plaintiff's evidence amounts to little more than an allegation that Newbern treated her unfairly and ungentlemanly. Title VII, however, is "not a federal 'civility code.' " *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir.1999) (en banc). Plaintiff was never the subject of sexual advances. (Nowlin Dep. at 356.) Plaintiff's evidence falls well short of the evidence needed to establish a hostile working environment. *See generally Mendoza*, 195 F.3d at 1246–47 (collecting cases which have rejected sexual harassment claims). Although Plaintiff may have perceived Newbern's behavior as hostile, no reasonable person would have considered Plaintiff's working environment hostile. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (holding that conduct is not actionable unless it is objectively hostile); *Mendoza*, 195 F.3d at 1246–47 (discussing what constitutes an objectively hostile work environment).

There is no evidence that Newbern ever threatened Plaintiff's physical safety. Newbern's behavior was not particularly humiliating. Although there is evidence that Newbern teased Plaintiff, the gener- al rule is that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998) (internal citations and quote marks omitted).

There is little or no evidence that Newbern's behavior affected Plaintiff's job performance. The deficiencies which earned Plaintiff a demotion are primarily her own fault. For example, one of the reasons Defendant demoted Plaintiff was her repeated tardiness. (Ex. 38 to Nowlin Dep.) Newbern's behavior, however inconsiderate, could not have affected Plaintiff's punctuality. Likewise, Newbern did not compel Plaintiff to take the coffee and smoking breaks for which she was reprimanded. There is no evidence that Newbern affected the accuracy of Plaintiff's paperwork, which Defendant found unsatisfactory.

Plaintiff has failed to produce evidence of a hostile work environment that creates an issue for trial. Even if Plaintiff's hostile work environment claim were properly before the Court, it would not survive summary judgment.

### E. Abandoned Claims

In paragraph nine of the Complaint, Plaintiff alleges that her demotion is "due to Defendant's practice of limiting opportunities for job advancement for female employees." It is not clear whether Plaintiff intends to advance a systemic disparate treatment claim. Plaintiff's brief presents no argument that would sustain her claim under this theory.

Likewise, Plaintiff's brief does not offer any argument to sustain her claims under the Equal Pay Act. Defendant's evidence shows that the men who allegedly made more money held jobs that were not "virtually identical" to Plaintiff's job. *See Waters v. Turner, Wood & Smith Ins. Agency, Inc.*, 874 F.2d 797, 799 (11th Cir.1989) (per curiam) (requiring claimants under

the Equal Pay Act to show that the comparitors' jobs are virtually identical). Plaintiff has not contested Defendant's evidence or argument. Accordingly, summary judgment is appropriate as to Plaintiff's systemic discrimination and Equal Pay Act claims. *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.,* 10 F.3d 1563, 1568 (11th Cir.1994).

## IV. Conclusion

For the reasons given above, Defendant's Motion for Summary Judgment (Doc. No. 15) is **GRANTED.** The clerk is instructed to **CLOSE** this case and **ENTER FINAL JUDGMENT** in favor of Defendant. Costs are taxed against Plaintiff.